## JACKSON v. SELEY–CORNFORTH GRAIN CO. et al. (No. 408.)

(Court of Civil Appeals of Texas. Waco. Dec. 2, 1926.)

1. **Trial ⚷143—Where evidence is conflicting, facts and inferences therefrom are for jury.**

Existence of facts, which evidence tends to prove, and of facts to be inferred from other facts, where evidence is conflicting, is matter for jury.

2. **Appeal and error ⚷927(7)—Evidence must be considered in light most favorable to appellant claiming error in instructing verdict.**

In determining whether instructing verdict was error, evidence must be considered in light most favorable to appellant discarding all conflicts.

3. **Carriers ⚷136—Sales ⚷182(1)—In buyer's suit against seller and carrier for shortage in cars of grain, fact of shortage held for jury.**

In suit for shortage in cars of grain as not containing amount called for by bills of lading brought by buyer against seller and carrier, whether there was shortage *held* for jury.

4. **Carriers ⚷136—Sales ⚷182(1)—Whether shortage in cars of grain, if existing, arose in transportation held jury question in suit by buyer against seller and carrier.**

In buyer's suit against seller and carrier for shortage in cars of grain, whether shortage, if existing, arose from loss in transportation *held* for jury.

5. **Customs and usages ⚷15(1)—Custom that weights of grain shipments at destination control, where seller draws drafts on buyer with bills of lading attached, is binding, if so general as to justify presumption of knowledge of it.**

Custom known to brokers and grain dealers that weights of grain shipments at destination control, in case of drafts with bills of lading attached, drawn by seller on buyer, is binding, where evidence shows custom is so general as to justify presumption of knowledge of it.

Appeal from McLennan County Court; James R. Jenkins, Judge.

Three separate suits brought in the justice court by the Seley-Cornforth Grain Company against C. M. Jackson and Houston & Texas Central Railroad Company, consolidated and tried as one. C. M. Jackson prayed recovery against the Company for any judgment recovered against him by plaintiff, and the Company prayed for recovery against C. M. Jackson for any judgment recovered against it by plaintiff. Judgment was rendered in favor of plaintiff against the Company and in favor of C. M. Jackson, and the Company appealed to the county court. Judgment was there rendered in favor of plaintiff against C. M. Jackson, and in favor of the Houston & Texas Central Railroad Company, and C. M. Jackson appeals. Reversed and remanded.

Tirey & Tirey, of Waco, for appellant.

John McGlasson, A. P. McCormick, and Spivey & Spivey, all of Waco, for appellees.

GALLAGHER, C. J. Seley-Cornforth Grain Company, a corporation, one of the appellees herein, instituted in the justice court three separate suits against C. M. Jackson, appellant herein, and Houston & Texas Central Railroad Company, the other appellee herein, to recover for alleged shortage in weights in three carloads of maize, together with attorney's fees for prosecuting each of said suits. Appellant will be designated by name, and appellees as the grain company and the railroad company, respectively. Jackson sold three carloads of maize, and shipped them to his own order at Waco, Tex., with instructions to notify the grain company on arrival. He received bills of lading for each of said cars, showing the amount of maize by weight purported to be contained therein. He drew a draft on the grain company at Waco for the amount of maize in each car as shown by the bill of lading therefor at the contract price, and attached to the same the bill of lading for such car. Each of said drafts was promptly paid by the grain company, and the bill of lading attached thereto was received by it. Said grain company then diverted said cars by surrendering said original bills of lading, and receiving in return therefor a bill of lading forwarding one of said cars to

its own order at Ennis, Tex., another to its own order at Calvert, Tex., and the other to its own order at Navasota, Tex. Each of said cars was unloaded and the contents thereof weighed by or for the party who purchased the same from the grain company. According to such weights, each of said cars contained less maize than shown by the bill of lading therefor, and less maize than paid for by the grain company on Jackson's draft for such car. Each purchaser made claim for refund to cover such shortage. The grain company paid each of said claims, and instituted said suits to recover the several amounts so paid. All said suits were consolidated and tried as one in the justice court. Judgment was rendered in that court in favor of the grain company against the railroad company for the damages claimed, and for attorney's fees, and in favor of Jackson that he go thence without day. The railroad company appealed to the county court.

The only pleadings in the record are those upon which the case was tried in the county court. The grain company sought a recovery against Jackson on the ground that he was legally bound to see that the amount of maize shown by said respective bills of lading, and paid for by said respective drafts, was actually delivered, and that it was usual and customary in the grain business that the true weight of each shipment should be determined by the weight at destination. The grain company sought a recovery against the railroad in the alternative, in event it should be found that Jackson had in fact loaded into each car the amount of maize shown by the bill of lading therefor, on the ground that it was liable for the value of all maize actually loaded into said cars and not delivered therefrom at destination. Jackson alleged that he had loaded into said cars all the maize shown by said bills of lading and collected for by said drafts, and that, if all said maize was not delivered at destination, it was the fault of the railroad company, and asked, in event the grain company recovered against him, that he have a like recovery against the railroad company. The railroad company alleged that it received said cars from its connecting carrier under bills of lading bearing the notation, "Shipper's Load and Weight," and that all said cars were properly sealed and in good order when received, and that no loss or damage accrued on its line. It asked, in event of recovery by the grain company aginst it, that it have a like recovery against Jackson.

The trial in the county court was before a jury. The court instructed a verdict in favor of the grain company against Jackson for the sum of $53.75 damages and interest, and the further sum of $60 attorney's fees, together with all costs, and in favor of the railroad company that neither Jackson nor the grain company recover anything against it. Judgment was rendered in accordance with said verdict, and said judgment is here presented for review.

## Opinion.

Appellant Jackson complains of the action of the court in instructing a verdict, and presents the same as ground for reversal of the judgment. In this connection he contends that the evidence raised an issue of fact with reference to whether there was any shortage in weights. One of said cars of maize was diverted and delivered to a purchaser at Ennis, Tex. The evidence tends to show that this car was loaded at Roscoe, Tex. Jackson testified affirmatively that the maize contained therein was weighed before it was shipped, and that 32,925 pounds of maize were placed in said car. He testified on cross-examination that it was not a fact that he did not know how much maize was placed in said car except by weigher's certificates. He also introduced public weigher's certificates showing that that amount of maize had been weighed. There was testimony tending to show that none of the contents of said car were lost in transportation. Said contents were weighed at Ennis by the purchaser. The maize was loaded into wagons, and each loaded wagon weighed. Each wagon was then weighed separately, and the weight thereof deducted as tare from the gross weight when loaded; the remainder being the net weight of the maize hauled in such load. The aggregate weight of all said loads and of the loose grain on the floor of the car, according to the testimony, was 31,105 pounds, which was 1,820 pounds less than Jackson testified was placed in said car when the same was loaded. There were some unexplained discrepancies in the tare weights deducted.

Another of said cars of maize was diverted and delivered to a purchaser at Calvert, Tex. The evidence shows that this car was also loaded at Roscoe. Jackson testified affirmatively that the maize contained therein was weighed before it was shipped, and that it weighed 31,790 pounds. He also testified on cross-examination, as he did with reference to the Ennis car, and also introduced weigher's certificates showing that that amount of maize had been weighed. The public weigher at Calvert testified that he weighed twenty-three loads of maize said to have been taken from said car, and said to have been all contained therein, and that the net weight of the same was 30,755 pounds, which was 1,035 pounds less than Jackson testified was placed in said car when the same was loaded. The purchaser testified that said twenty-three loads so weighed contained all the maize found in said car, including loose grain swept from the floor. There was no attempt to trace this car nor to show that none of the contents of the car were lost or

removed therefrom in course of transportation, except the fact that the seals thereon were intact.

The other of said cars of maize was diverted and delivered to a purchaser at Navasota, Tex. The evidence tends to show that this car was loaded at Loraine, Tex. Jackson testified affirmatively that the maize contained therein was weighed before it was shipped, and that it weighed 44,278 pounds. He testified, however, that he knew the number of pounds placed in said car only by the weigher's certificates. He introduced in evidence a weigher's certificate, verified by the affidavit of the weigher, covering the entire contents of said car, showing the number of heads contained therein and the net weight of each load put into said car. The aggregate net weight of said several loads amounted to 44,278 pounds, as testified by Jackson. Said affidavit also showed that said car was sealed or locked, except when under the immediate and personal supervision of the weigher. There was testimony tending to show that none of the contents of said car were lost in transportation. The contents of said car on arrival at Navasota were removed by loading the same upon wagons. The purchaser testified that each wagon was correctly weighed on accurate scales under his personal supervision, and that the net amount of the maize found in said car was 41,455 pounds, which was 2,823 pounds less than the affidavit of the weigher at Loraine showed was placed in said car when the same was loaded. The purchaser stated that his testimony was based on a ledger entry showing the aggregate net weight of the contents of said car; that said entry was made by his bookkeeper; and that he had misplaced the load by load weights.

[1] The facts above recited show that there was affirmative evidence that a definite amount of maize by weight was placed in each car, respectively, and that there was a shortage in the weight of each car when unloaded at final destination. There was some testimony tending to show that as to one or more of said cars there was no loss in the course of transportation. If there was no loss in transportation, there was a direct conflict in the evidence as to the weight of the maize contained in each of said cars, respectively. It was the peculiar province of the jury to pass upon this conflict and to determine whether the destination weights so proved were correct. We quote from the opinion of the Supreme Court in Stooksbury v. Swan, 85 Tex. 563, 573, 22 S. W. 963, 967, as follows:

"In all cases the existence or nonexistence of the facts the evidence tends to prove, if there be conflict, as well as the existence or nonexistence of the fact to be inferred from other facts, must be left to the determination of the jury."

[2, 3] In passing upon appellant's contention, the facts in evidence must be considered in the light most favorable to him, discarding all conflicts. Charles v. El Paso Electric Ry. Co. (Tex. Com. App.) 254 S. W. 1094, 1095. There was affirmative evidence that the amount of maize called for by the respective bills of lading, and collected for by the drafts drawn therefor, was placed in each of said cars, and there was some evidence tending to show that there was no loss from one or more of said cars in transportation. If said evidence, standing alone and uncontradicted, was sufficient to support a finding that there was no shortage, the court erred in instructing a verdict for the grain company. We think it meets the test prescribed, and that the action of the court here complained of constitutes reversible error. Stewart v. Miller (Tex. Civ. App.) 271 S. W. 311, 315, and authorities there cited; Weathered v. Meek (Tex. Civ. App.) 258 S. W. 516, 519, and authorities there cited.

[4] Appellant, Jackson, further contends in this connection, in event it should be found that there was such shortage in weight that the evidence raised an issue of fact whether such shortage arose by reason of loss of maize from the cars in course of transportation. We sustain this contention. In view of the direct conflict in the evidence with reference to the amount of maize contained in said cars as indicated by the loading and unloading weights, respectively, the facts in evidence, relied on to show that such conflict did not arise by reason of loss or removal from the cars in the course of transportation, are not of such conclusive character as to warrant an instructed verdict on that issue. Baker v. H. Dittlinger Roller Mills Co. (Tex. Civ. App.) 203 S. W. 798, 799.

[5] The grain company pleaded that appellant, Jackson, was a grain dealer, and had been such for a long time, and that it was usual and customary and well known to the grain dealers of the state of Texas that in shipments handled as these were the destination weights controlled. Its witness Henshaw testified that it was the custom, known to brokers and grain dealers in Waco and Texas generally at that time, in transactions where drafts were made by the seller upon the purchaser with bills of lading attached, to guarantee the weights at destination. There was no evidence that Jackson was engaged in the grain business, except as such fact might be inferred from the transactions involved in this case, and no evidence that he was ever engaged in such business prior to that time. There was no proof that he in fact knew of the existence of the custom so testified to by said witness. Appellant contends that he cannot in any event be bound by such custom, in the absence of such proof. In the case of a general custom it is sufficient to show that the custom is so general as to justify the presumption that the person sought to be charged had knowledge

of the same. 27 R. C. L. p. 161, § 9; O. M. Insurance Co. v. Reymershoffer's Sons, 56 Tex. 234, 238; Shippers' Compress Co. v. Northern Assur. Co. (Tex. Civ. App.) 208 S. W. 939, 946 (writ refused).

The other issues presented by appellant will not necessarily arise upon another trial.

The judgment of the trial court is reversed, and the cause remanded.

Associate Justice BARCUS took no part in the consideration and disposition of this case.