The Pease Piano Company v. Paul B. Matthews.
No. 198.

1. Contract of Guaranty—*strictly construed.* A contract of guaranty will not be extended beyond its strict terms.

2. ——— *silent, guarantor not liable for defalcations of principal prior to.* A guarantor who undertakes that his principal shall perform the following covenant, to wit: "I hereby certify that all pianos that are now, or shall hereafter be, furnished me by you, are to be held upon consignment and sale, or lease, for your benefit, insuring same against loss by fire, or held at my risk of fire, exempting you from all assessments and taxes while in my possession. All money, notes, or other property received by me by the sale or lease of any piano, shall belong to you until settlement is made therefor;" is not liable thereunder for defalcations of the agent prior to the making of such contract, respecting pianos disposed of before the contract was made.

3. ——— *conversations between principal and guarantee prior to, incompetent against guarantor.* It is not incompetent, in an action upon such contract, to prove conversations had between the consignor and the consignee prior to the making of such contract, for the purpose of enlarging or extending the guarantor's liability thereunder.

4. ——— *agreement between principal and guarantee respecting matters outside, cannot enlarge guarantor's obligation.* The consignor and consignee in such contract cannot, by any agreement between themselves with respect to matters not coming within its terms, enlarge the obligation of the guarantor under his contract of guaranty.

Error from Saline District Court. Hon. R. F. Thompson, Judge. Opinion filed March 22, 1897. *Affirmed.*

The plaintiff in error brought an action against the defendant in error in the District Court of Saline County upon the following contract of guaranty:

"*Pease Piano Co.*—Dear Sirs: I will take your pianos, such as described in your catalogue, on consignment, on the following conditions, in consideration of the agency for the sale or leasing of said instruments in Saline, McPherson and Ottawa Counties, Kansas.

"1. I hereby certify that all pianos that are now, or shall hereafter be, furnished me by you, are to be held upon consignment and sale, or lease, for your benefit, insuring same against loss by fire, or held at my risk of fire, exempting you from all assessments and taxes while in my possession. All money, notes, or other property received by the sale or lease of any piano, shall belong to you until settlement is made therefor.

"2. I will sell or lease all instruments ordered, within ninety days from shipment, and will promptly remit to you cash or approved customer's notes or leases, which shall always be subject to your approval, with security on the instrument sold, as the case may be ; said notes and leases to be made on blanks furnished by you, to draw interest at the rate of ____per cent. per annum, or the same to be deducted from face value of notes or leases, the average time not to exceed six months and payment of same to be guaranteed by me at maturity. In case I fail to sell or lease any of said instruments within ninety days, I agree to return the same to you free of expense.

"3. All instruments taken back from customers on account of default in payments or for other causes, and all new or second-hand instruments taken in exchange or in part payment of instruments consigned to me by you, are to be regarded the same as goods consigned to me and to be accounted for in the same manner.

"4. The right of instructing as to the terms upon which sales or leases are to be made, and the manner of securing deferred payments, are reserved to you.

"5. Upon your demand or that of your agent I will deliver as you may direct, free of charge or expense of any kind to you, any and all of said goods remaining unsold or not leased at the time of said demand, including packing cases of same.

"6. All goods returned to you to be passed to my credit at ninety-five per cent. of original bill, the balance, five per cent., being deducted for depreciation and shop wear of goods, except instruments which have been taken in exchange or trade or from customers for default in payment on notes and leases, such

stock to be credited at a fair cash value to be determined by you.    All freights to be paid by me.

"7. At your request, I will send you a statement of all instruments received and sold, and remaining on hand unsold or not leased, and make prompt returns as sales or leases are made.

"This agency may be terminated at any time by giving thirty days' notice, by either party, and any stock which I may have on hand will be subject to your order.      (Signed)                ED. R. NASH.

"Address, Salina, Kan.    Date, Oct. 15, 1892.

"SIR — Your contract or proposal, as above, we accept.      (Signed)                PEASE PIANO CO.·

"In consideration of the premises and one dollar, the receipt of which is hereby acknowledged, the undersigned guarantees to Pease Piano Company, the faithful performance of the agreements mentioned in the above instrument, by the party whose signature is thereto affixed.    (Signed)    PAUL B. MATTHEWS."

A demurrer was interposed to the evidence of the plaintiff and was by the court sustained.    Plaintiff brings the case here.

*Z. C. Millikin*, for plaintiff in error.

No appearance for defendant in error.

MAHAN, P. J.    The sole ground of contention in this case arises out of the construction of the contract as to the liability of the guarantor.    The plaintiff in error contends that the guarantor was made liable for the defalcations of the agent of the Company prior to the making of the contract on December 15, 1892 ; that the agent's conduct of the plaintiff's business had not been satisfactory ; that he had not properly accounted for goods consigned to him on commission, and the Company required him to procure a guaranty as a condition of continuing the agency ; and that he

PEASE PIANO CO. V. MATTHEWS.          373

March 22, 1897.     Opinion.   Mahan, P. J.          C. Div.

procured this contract, and the guaranty of the defendant in error.

The first assignment of error is with respect to ruling out certain evidence offered by the plaintiff. In the first place, the evidence offered was in relation to matters that transpired between Nash and the plaintiff Company prior to making the contract. This was incompetent and immaterial and the court properly excluded it. In the next place, the plaintiff offered to prove that there was some arrangement between its agent, Mr. Crane, who took the contract, with respect to Crane's expenses in coming to Salina for the purpose of adjusting the business of the Company with Nash. The contract of guaranty contemplates nothing of the kind, and the evidence was properly excluded. Again, the Company offered to prove by an exhibit, a copy from the books of the Company, what Nash was entitled to, and, consequently, the balance for which the guarantor was liable. This was secondary evidence and clearly objectionable, and was properly excluded by the court. The plaintiff also offered to show — as a conclusion, a deduction from the books of the Company — what was the balance due " upon the contract of guaranty sued upon." This was clearly a conclusion, and there was no error in excluding it. The plaintiff also offered to prove by its bookkeeper in Chicago, what he knew about Crane going out to Salina, Kan. The answer was clearly hearsay and was properly excluded.

The second assignment of error is, that the court erred in sustaining the demurrer of the defendant to the evidence offered by the plaintiff on the trial of the action. Construing the contract, that the guarantor was not liable, under its express terms, for any defalcation of the agent prior to the making of the con-

tract, the evidence showed clearly that the Company had all and more than was due to it, from instruments and the avails of instruments that were on hand at the time the contract was made and that were shipped to the agent thereafter. Had the court permitted the jury to take the evidence and had the jury returned a verdict for the plaintiff, it would have been incumbent upon the court to have it set aside. The demurrer to the evidence was properly sustained. The court committed no error in rendering judgment for the defendant. The court committed no error in its rulings in the proceedings had in the case ; it was not error to deny the motion for a new trial.

The judgment is affirmed.